**In re The OVERLY–HAUTZ COMPANY, Debtor & Debtor in Possession.**

**Bankruptcy No. B83–01196.**

United States Bankruptcy Court, N.D. Ohio, E.D.

Feb. 7, 1986.

■■■■■■■■

Richard A. Baumgart, Stephen Dunson, Cleveland, Ohio, for Overly-Hautz Co.

David Dickieson, Washington D.C., for I.R.S.

William Neubert, Cleveland, Ohio, for Creditors Committee of Overly-Hautz Co.

## ORDER

WILLIAM J. O'NEILL, Bankruptcy Judge.

In the within case the United States of America, Department of the Treasury, Internal Revenue Service (IRS) filed a supplemental claim for $281,614.45 to which the Debtor, The Overly-Hautz Company (OHC) has objected. The parties submitted the matter on stipulations, oral argument and briefs.

The parties agreed to the following stipulation of facts:

"1. This Court has subject matter jurisdiction to determine the validity of the claim of the Internal Revenue Service (IRS), against OHC. This Court has properly exercised personal jurisdiction over the parties, and this action is subject to the Court's venue.

2. The tax dispute in issue relates to the underfunding by OHC of its Salaried Employees' Pension Plan for the following tax years:

a. November 1, 1980, to October 31, 1981;

b. November 1, 1981, to December 31, 1981; and

c. January 1, 1982, to December 31, 1982.

3. There was a funding deficiency for the first tax year of $71,206.98, for the second tax year of $3,972.62, and for the third tax year of $19,860.85. Therefore, the cumulative funding deficiency for the first tax year was $71,206.98, for the second tax year, $75,179.60, and for the third tax year, $95,040.45.

4. On August 12, 1982, OHC filed Form 5500–R, Registration Statement of Employee Benefit Plan, with the IRS for the first tax year. The Form 5500–R indicated there was a funding deficiency for the November 1, 1980, to October 31, 1981, tax year. See Exhibit A1–2.

5. On August 12, 1982, OHC filed Form 5500–R, Registration Statement of Employee Benefit Plan, with the IRS for the second tax year. The Form 5500–R indicated there was a funding deficiency for the November 1, 1981, to December 31, 1981, tax year. Exhibit B1–2.

6. On April 28, 1983, OHC filed a voluntary petition of bankruptcy under Chapter 11 of the Bankruptcy Code.

7. The Attorney General of the United States, the Cleveland office of the IRS, and the United States Attorney for the Northern District of Ohio were on the Bankruptcy Court matrix and had actual knowledge of OHC's bankruptcy petition. See Exhibit D.

8. On May 13, 1983, this Court set a September 19, 1983 deadline for filing proofs of claim. This deadline was indicated in the Court's notice of the meeting of creditors under 11 U.S.C., Section 341(a). The IRS received this notice. See Exhibit E.

9. On August 26, 1983, IRS filed a proof of claim with this Court as to certain 1980–1983 corporate, withholding, and FICA taxes. See Exhibit F.

10. IRS did not file a proof of claim prior to the September 19, 1983 filing deadline with respect to the funding deficiencies of the OHC Salaried Employees' Pension Plan discussed in Paragraphs 4 and 5 above.

11. On October 13, 1983, OHC filed Form 5500–C Return/Report of Employee Benefit Plan, with the IRS for the third tax year. The Form 5500–C indicated there was a funding deficiency for the January 1, 1982, to December 31, 1982, tax year. The cumulative funding deficiency as of the end

of the 1982 tax year was $95,040.45, such sum includes the funding deficiencies of $71,206.98 for the first tax year and $3,972.62 for the second tax year.

12. On February 15, 1985, the IRS sent a 30-day letter indicating its proposed assessment for excise taxes under Section 4971(a) and (b) of the Internal Revenue Code as to the funding deficiencies of the OHC Salaried Employees' Pension Plan. See Exhibit G1–7.

13. On June 10, 1985, IRS filed a proof of claim for the amount of the excise taxes set forth in the prior paragraphs. This proof of claim and the letter accompanying it from the IRS characterized the proof of claim as "supplementing" the proof of claim filed August 26, 1983. The amount set forth in the claim filed August 26, 1983 was totally offset against an overpayment of other taxes by OHC. This offset was indicated in a letter to OHC on December 5, 1983. The IRS letter of June 10, 1985, makes reference to a purported withdrawal letter dated January 3, 1985. The August 26, 1983, claim related to corporate, withholding, and FICA taxes and did not include penalty taxes in relationship to the OHC Salaried Employees' Pension Plan. See Exhibits H, I, J, and K."

The Court finds the following additional facts:

14. The IRS letter of January 3, 1985 to the United States Attorney, Exhibit K, which was filed with the Court and sent to the Debtor states, in part, "Our proof of claim filed in the proceeding noted above has been closed. You may therefore discontinue further consideration of the claim."

a. The IRS letter of June 10, 1985, Exhibit I, states, in part, "Our withdrawal letter dated January 3, 1985, was correct. However, the attached proof of claim supplements the original claim, which is paid."

15. Attached to Debtor's Reply Brief is an affidavit of President, Paul J. Reeves, indicating that after the bar date Debtor relied on identity and quantity of claims on file in decisions and assessments concerning sale of various assets including the Motor Base Division.

16. The supplemental claim filed June 10, 1985 (Exhibit J) sets forth the initial tax imposed under 26 U.S.C. § 4971(a) on Debtor's annual pension plan accumulated funding deficiency. Also reflected are amounts imposed under 26 U.S.C. § 4971(b) as additional tax for Debtor's failure to timely cure accumulated funding deficiency. These amounts have not yet been assessed.

A brief summary of facts reflects the IRS filed a timely claim for corporate, withholding, and FICA taxes. The IRS letter of January 3, 1985 to the United States Attorney with copies to the Debtor and the Court withdrew this claim. On June 10, 1985 the IRS filed a supplemental claim purported to amend the original claim. A letter accompanying that filing confirmed that the initial claim had been withdrawn. OHC argues that having withdrawn the original claim, IRS could not file an amendment thereto outside the claims bar date. Alternatively, OHC asserts the supplemental claim is an untimely new claim rather than an amendment of the original. IRS argues to the contrary.

## I. WITHDRAWAL OF CLAIM

█ Bankruptcy Rule 3006 provides that "a creditor may withdraw a claim as of right by filing a notice of withdrawal except as provided in this rule..." Exceptions to creditor's discretionary right of withdrawal are inapplicable herein; therefore, IRS's filing notice was all that was required for claim withdrawal. Since no specific form is required, the IRS letter of January 3, 1985 to the Court constituted withdrawal of its timely filed claim as confirmed by letter of June 10, 1985. Withdrawal was "of right" and required no court authorization. An untimely amendment of a withdrawn claim is inappropriate. *In re E.O. Thompson's Sons*, 123 F. 174 (D.C.E.D.Pa.1903). IRS's supplemental claim, being untimely and seeking to amend a withdrawn claim is, therefore, disallowed.

## II. AMENDMENT OF CLAIM

There is an alternative basis for disallowing the IRS supplemental claim. Assuming the original claim were not withdrawn, is the supplemental claim an appropriate amendment thereto? The facts reflect it is clearly inappropriate.

■ Amendments to proofs of claim are freely allowed to cure a defect in the claim originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery on the facts in the original claim. See *United States v. International Horizons, Inc.*, 751 F.2d 1213 (11th Cir.1985); *First National Bank of Mobile v. Everhart*, (In re Commonwealth Corp.), 617 F.2d 415 (5th Cir.1980); and *Szatkowski v. Meade Tool and Die, Co.*, 164 F.2d 228 (6th Cir.1947). Amendment is not permitted as a guise for filing an untimely new claim. *International Horizons;* and *Commonwealth.* Courts are guided by principles of equity in this determination to insure that "fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done". *Pepper v. Litton*, 308 U.S. 295, 305, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

■ Amendment is permitted where the original claim provided notice to the court of the existence, nature and amount of the claim and that it was creditor's intent to hold the estate liable. *International Horizons.* This determination parallels Federal Rule 15(c) permitting an amendment to relate back to an original filing. *In re Miss Glamour Coat Co., Inc.*, 80–2 U.S.T.C. ¶ 9737 (S.D.N.Y.1980). Courts have reached varying conclusions in applying this test to tax claims. In *Menick v. Hoffman*, 205 F.2d 365 (9th Cir.1953), the Court held a claim for withholding taxes could be amended to include a claim for an individual's income taxes on the basis that "both are demands of the same generic origin". In *In re Emerald Green Corp.*, 2 B.C.D. 938 (Bankr.E.D.N.Y.1976), the Court allowed amendment of a claim for withholding and social security taxes to include a claim for corporate income tax stating that

"tax obligations clearly fall within the matrix of an indebtedness due and payable to the federal government in their revenue function". These cases represent the liberal end of the spectrum. The pendulum swings in *International Horizons,* where the Court held a claim for withholding and FUTA taxes could not be amended to include a claim for corporate income tax because the two types of taxes were totally unrelated. See also *In re Davidson Lumber Co.*, 47 B.R. 597 (Bankr.S.D.Fla.1985).

■ The IRS supplemental claim asserts liability for excise taxes related to Debtor's pension plan funding deficiencies. See 26 U.S.C. § 4971. Except for their status as taxes, excise taxes are totally unrelated to the original claim for corporate, withholding and FICA taxes. The original claim provides no notice of intent to hold the Debtor liable for excise taxes, nor does it indicate existence or nature of IRS's claim for such taxes. Given these facts, the supplemental claim is not an amendment, but is an untimely original claim for excise taxes.

■ Balancing of equities is required to determine propriety of an amendment. *In re Gibraltor Amusements, Ltd.*, 315 F.2d 210 (2d Cir.1963). An equitable factors analysis is set forth in the case of *In re Miss Glamour Coat Co., Inc.*, 80–2 U.S. T.C., 9737 (S.D.N.Y. Oct. 8, 1980). These factors are: (1) whether the Debtor and creditors relied on the earlier proof of claim or had reason to know that subsequent proofs of claim would be filed pending completion of an audit; (2) whether other creditors will receive a windfall by the courts refusing to allow amendment; (3) whether the Service intentionally or negligently delayed in filing its proof of claim; (4) the justification for the Service's failure to request extension of the bar date; and (5) whether equity requires consideration of any other factors. The IRS's supplemental claim also fails as an amendment under this analysis.

The Debtor relied on the claims filed, and based on this knowledge sold various as-

sets including the Motor Base Division. Debtor had no reason to believe a subsequent proof of claim would be filed because of IRS's letter of January 3, 1985 indicating the IRS claim should no longer be considered. IRS was negligent in delaying to file a claim for excise taxes. They had notice of the claims bar date and should have been aware of the pension funding deficiency since debtor filed Forms 5500–R before the petition was filed. These forms clearly indicated a funding deficiency. If IRS were uncertain of the tax effect of the deficiencies, extension of the claims bar date was available. Failure to request an extension was unjustified. In sum, these equitable considerations weigh heavily in compelling denial of this late amendment of claim which does not create a windfall to other creditors. The supplemental claim, therefore, is not an amendment of the original claim.

## III. POST-PETITION CLAIM

The parties' briefs raise additional issues concerning the supplemental claim, the majority being rendered nugatory by the decision that the claim is an invalid amendment. There are, however, several issues regarding the alleged post-petition character of the supplemental claim which warrant discussion.

■■■■■ IRS argues it should be permitted to file a late claim. Bankruptcy Rule 9006(b) provides when a party moves for an extension of time after expiration of the claim filing period, an extension may be granted only if claimant's failure to act was the result of excusable neglect. The "excusable neglect" standard requires movant to show that failure to perform was due to circumstances beyond the reasonable control of the person whose duty it was to perform. *Biscayne 21 Condominium Association, Inc. v. South Atlantic Financial Corp.,* 767 F.2d 814 (11th Cir. 1985). Since there is no evidence that failure to timely file was the result of excusable neglect, IRS's attempt to raise this issue by brief fails.

■■■■■ IRS maintains the 1982 excise taxes are administrative expenses which is contrary to the unsecured priority status on the supplemental claim. Further, it is contrary to Bankruptcy law. Administrative expenses may include "any tax—incurred by the estate..." 11 U.S.C. § 503(b)(1)(B)(i). Administrative priority status is granted only to taxes incurred by the estate as a necessary cost of preserving the estate. *United States v. Redmond,* 36 B.R. 932 (D.Kansas 1984). A tax is incurred on the date it accrues, not on the date of assessment or the date it is payable. *Redmond; In re Davidson Lumber Co.,* 47 B.R. 597 (Bankr.S.D.Fla.1985); and *In re Scrap Disposal, Inc.,* 24 B.R. 178 (Bankr.S.D.Calif.1982), aff'd 38 B.R. 765 (Bankr. 9th Cir.1984). The excise taxes relate to Debtor's pension plan funding deficiencies for 1982 which accrued December 31, 1982. This is so with the entire claim which includes the tax on the initial funding deficiency and additional tax imposed for failure to timely cure that deficiency. 26 U.S.C. § 4971(a) and (b). Having been incurred as of December 31, 1982, the taxes are pre-petition irrespective of the fact that returns, assessment and payment were not due until after the petition date. The 1982 taxes are not entitled to administrative expense status under Section 503. Consideration of Section 502(i) is unnecessary since it does not give the 1982 taxes administrative status as IRS maintains. In reality, the section provides to the contrary.

> "A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(6) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition."

11 U.S.C. § 502(i)

In effect this section provides that the specified claims which arise post-petition will nonetheless be treated as pre-petition claims and thus are denied status as administrative expenses. See *In re Westholt*

*Manufacturing, Inc.*, 20 B.R. 368 (Bankr. D.Kansas, 1982), aff'd 36 B.R. 932 (D. Kansas, 1984); *Perpetual American Bank v. District of Columbia,* (In re Carlisle Court, Inc.), 36 B.R. 209 (Bankr.D. of C.1983); and 3 Collier on Bankruptcy, ¶ 502.09 (15th Edition 1985). Consequently, the 1982 taxes are not administrative expenses.

For reasons stated, the Debtor's objection to the supplemental claim of the Internal Revenue Service is sustained and the claim is disallowed.

IT IS SO ORDERED.