In re Herbert A. MILLER, Jr. and Quindal Sue Miller, Debtors.

UNITED STATES of America, Plaintiff/Appellant,

v.

Herbert A. MILLER, Jr., and Quindal Sue Miller, Defendants/Appellees.

No. CIV–1–88–447.
Bankruptcy No. 1–86–01972.

United States District Court, E.D. Tennessee, S.D.

Oct. 12, 1989.

Thomas E. Ray, Ray & North, P.C., Chattanooga, Tenn., for appellee Herbert A. Miller, Jr.

Steve McKnight, Asst. U.S. Atty., Chattanooga, Tenn., Carl Carter, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for U.S.

## MEMORANDUM AND ORDER

EDGAR, District Judge.

This matter is presently before the Court upon the appeal of the United States of America from the bankruptcy court's determination, by an order and memorandum opinion dated September 1, 1988, that the amended proof of claim of the United States for internal revenue taxes (Claim 26d) should be disallowed, thereby sustaining the debtors' objection. *In re Miller*, 90 B.R. 317 (Bankr.E.D.Tenn.1988).

For the reasons that follow, the appeal is DENIED.

## I. *Background*

During the 1986 tax year, Herbert A. Miller (hereinafter the "debtor") was the controller and day-to-day financial manager of Dorothy W., Inc., doing business as Aunt Lou's Family Buffet (hereinafter the "corporate-debtor"). Dorothy W., Inc. experienced financial hardship and filed for bankruptcy under chapter 11 of the Bankruptcy Code on August 8, 1986. On December 29, 1986, the corporate-debtor converted its bankruptcy to a chapter 7 liquidation action. Dorothy W., Inc. failed to pay all of its withheld employment taxes during the four taxable quarters of 1986 in the total approximate amount of $40,542.27.

Herbert Miller and his wife, Quindal Miller (hereinafter the "debtors"), filed their personal petition in bankruptcy under chapter 13 of the Bankruptcy Code on September 12, 1986. A proof of claim for internal revenue taxes was originally filed on October 3, 1986, in their case, reporting an unsecured priority claim for 1984 income taxes. This original claim was subsequently thrice amended to include an income tax deficiency for 1985 and 1986, and an Internal Revenue Code § 6672 penalty with respect to the unpaid employment taxes of Dorothy W., Inc. The first amended claim was filed on December 22, 1986, the second on June 24, 1987, and the third on August 20, 1987. The bar date for filing claims was on January 13, 1987.

The third amended proof of claim for internal revenue taxes filed in this action resulted from an investigation of Dorothy W., Inc. that had been requested by an employee of the Special Procedures Section, Internal Revenue Service (hereinafter "IRS"), at Nashville, Tennessee. In accordance with IRS procedure, the Special Procedures Section in Nashville requested the Collection Division of the IRS begin a 100% penalty investigation on all individuals connected with Dorothy W., Inc. who were in a position of responsibility and authority in the corporation. The investigation was assigned to a local revenue officer, Mr. Zorn. The revenue officer first talked to the debtor on September 12, 1986, about a month after the corporate-debtor filed its chapter 11 case. The debtors' individual chapter 13 case was filed the same day. The debtor did not tell the revenue officer that he was filing or had filed a chapter 13 case.

In the schedules filed with their chapter 13 petition, the debtors listed debts to the IRS for 1984, 1985 and 1986 income taxes, and a contingent debt for the 100% penalty arising from Mr. Miller's involvement with Dorothy W., Inc. The debts were scheduled as follows:

| Creditor | Amount | When Incurred |
|---|---|---|
| IRS | $2,895.00 | 1984 |
| IRS | 9,500.00 | 1985 |
| IRS | 9,000.00 | 1986 |
| IRS | 1.00 | Contingent Claim on Dorothy W., Inc. Withholding |

Notice of the debtors' chapter 13 case was also sent to the IRS Special Procedures Section in Nashville, Tennessee. The IRS admits receiving notice of the chapter 13 case which set January 14, 1987, as the last day for filing proofs of the claims.

Shortly after this notice was mailed, the debtors amended the schedule of debts as follows:

> Internal Revenue Service
> Special Procedures Section
> P.O. Box 1107, Stop 31
> Nashville, Tennessee 37202   $1.00
>
> (Contingent liability for withholding of SVW, Inc.)

The debtors' attorney certified service of the amendment on the IRS on the same day that it was filed, September 30, 1986.

On October 3, 1986, the IRS filed a proof of claim for personal income tax owed by the debtor for the year 1984 in the amount of $2,900.

The meeting of creditors was held as scheduled on October 16, 1986, and the court confirmed the plan on the same day. There were no objections by creditors or the chapter 13 trustee.

During this period of time, the local revenue officer was continuing the 100% penalty investigation. He met with Mr. Miller again in November 1986. Mr. Miller did not tell the revenue officer that he had already filed a chapter 13 case. The revenue officer completed his case in early December 1986. He recommended that the 100% penalty be assessed against Mr. Miller. In mid-December 1986, the revenue officer telephoned Mr. Miller and told him he had proposed assessment of the 100% penalty. Mr. Miller still did not mention his chapter 13 case. The revenue officer's group manager approved assessment of the penalty about the same time, mid-December 1986. The recommendation was sent to a clerk to prepare a formal notice of assessment of the 100% penalty.

On December 22, 1986, the IRS amended its proof of claim to add personal income tax for the year of 1985. The time for filing proofs of claims in the debtor's chapter 13 case ended on January 14, 1987. The IRS had not filed a proof of claim for the 100% penalty and had not asked for an extension of the time to file a proof of claim. The proposed assessment was mailed to the debtor on February 23, 1987, about two months after the IRS had approved the proposal. The IRS says that the delay was due to the normal backlog of cases and the holiday season that intervened after approval of the proposed assessment.

After Mr. Miller received the proposed assessment in late February 1987, the debtors' attorney wrote a letter to the local revenue officer who did the penalty investigation. The letter is dated March 10, 1987 and notified the revenue officer that the debtors were in a chapter 13 case. The revenue officer responded to the letter by calling the debtors' attorney and advising him that the penalty case had been turned over to the Special Procedures Section in Nashville. In May 1987, the bankruptcy court entered a routine order allowing claims, including the IRS's claim against the debtors for 1984 and 1985 personal income tax.

On June 24, 1987, the IRS amended the claim again to include 1986 personal income tax. This was the first amendment after the bar date, but the debtors have not objected to it. In July 1987, Mr. Miller received a letter from the IRS Service Center in Memphis, Tennessee, stating that the 100% penalty was being assessed. On July 15, 1987, the debtors' attorney responded with a letter informing the IRS that the debtors had filed a chapter 13 case in September 1986. The Memphis IRS office forwarded the letter to the Special Procedures Section in Nashville. On August 20, 1987, the IRS filed the amendment to its claim to add the 100% penalty.

## II. *Discussion*

Since the claim was filed beyond the bar date, this Court's ruling on the timeliness

of the claim depends on whether the August 20, 1987 claim relates back as an amendment to a timely filed claim or whether it is an entirely new claim.

■ According to Fed.R.Civ.P. 15(c), the timely filed claim must identify the "conduct, transaction, or occurrence" from which the second claim arises. Courts freely allow amendments to bankruptcy claims,

> ... when the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim.... (citations omitted) Still, the court must subject post-bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment.

*United States of America v. International Horizons, Inc. (In re International Horizons),* 751 F.2d 1213, 1216 (11th Cir.1984). Under a traditional analysis, the factor most often considered is whether the "amended" claim arises out of the same transaction or occurrence set forth in the original timely filed claim. *In re Overly–Hautz Company,* 57 B.R. 932, 936 (Bankr. N.D.Ohio 1986), *aff'd,* 81 B.R. 434 (Bankr.N.D.Ohio 1987). An amendment is permitted where the original claim provided notice to the court of its existence, nature and amount of the claim, and it was the creditor's intent to hold the estate liable. *International Horizons,* 751 F.2d at 1216. Courts are guided by principles of equity in this determination to insure that "fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." *Pepper v. Litton,* 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939).

In applying the standard to the amended claims by the IRS, the courts have reached varying results in similar cases. Basically, two lines of authority have emerged:

(1) The liberal view which holds prior tax claims as being of the "same genre" as the amended claim, and falling "within the matrix of an indebtedness" due the federal government in "their revenue function." *In re Midwest Teleproductions Company, Inc.,* 69 B.R. 675, 677 (Bankr.N.D.Ohio 1987) (quoting *In re Emerald Green Corporation,* 2 B.C.D. (CRR 938, 939) (Bankr. E.D.N.Y.1976). *See also Menick v. Hoffman,* 205 F.2d 365 (9th Cir.1953).

(2) The conservative view is that such claims for different types of taxes do not arise out of the same "conduct, transaction, or occurrence" as the timely filed claim. *In re International Horizons,* 751 F.2d 1213 (11th Cir.1985); *In re Major Mud and Chemical Company, Inc.,* 81 B.R. 412 (Bankr.W.D.La.1988); *In re Overly–Hautz Company,* 57 B.R. 932 (Bankr.N.D.Ohio 1986).

In particular, courts analyzing whether a claim for a 100% penalty assessment following a timely filed claim for personal income taxes is a proper amendment have reached opposite conclusions. *See In re Saxe,* 14 B.R. 161, 164 (Bankr.S.D.N.Y. 1981) (100% penalty for corporation's failure to pay withholding and FICA taxes is a personal liability of the individual officer and is of the same generic origin as the personal income tax liability); *In re Simms,* 40 B.R. 186, 190 (Bankr.N.D.Ga. 1984) (Claim for individual income taxes evinces no intent to hold an estate liable for a penalty for a corporation's nonpayment of federal employment and withholding taxes).

■ Having reviewed the cases, this Court is inclined to adopt the conservative approach as set forth in *In re International Horizons.* This approach seems to be more in line with the general standards set forth by Fed.R.Civ.P. 15(c) whereby the amendment is not allowed if the timely claim does not sufficiently identify the "conduct, transaction, or occurrence" from which the untimely claim arises. In the present case, the late claim is for a 100% penalty assessed against the debtor as an officer of Dorothy W., Inc. for employment taxes due, while the earlier claim is for income taxes. As such, the timely claim is based on the debtor's conduct simply as a taxpayer, while the untimely claim is based on the debtor's conduct as an employer.

Further, in filing the claim for income taxes, the IRS exhibited no intent to hold the estate liable for the 100% penalty for withholding taxes not paid by the corporate-debtor. Nor does the 100% penalty tax claim describe "with greater particularity" the claim for income taxes. The claim for a 100% penalty is an entirely new claim based on different conduct and a different set of facts than was the income tax claim. *See In re Major Mud and Chemical Company*, 81 B.R. 412 (Bankr.N.D.La.1988); *In re Norris Grain Company*, 81 B.R. 103 (Bankr.M.D.Fla.1987); *In re Overly–Hautz Company*, 57 B.R. 932 (Bankr.N.D.Ohio 1986); *In re Simms*, 40 B.R. 186 (Bankr.N.D.Ga.1984). Except for their status as taxes, they are totally unrelated to the original claim for income taxes. In addition to providing no notice of intent to hold the debtor liable for the 100% penalty, it does not indicate the existence or nature of the IRS's claim for such taxes nor the amount. Given these facts, the supplemental claim is not an amendment but an untimely original claim for a 100% penalty.

■ However, a balancing of the equities is also required in determining the propriety of an amendment. *In re Overly–Hautz Company*, 57 B.R. at 936. An equitable factor analysis is set forth in the case of *In re Miss Glamour Coat Company, Inc.*, 80–2 U.S.T.Cas. (CCH) ¶ 9737 (S.D.N.Y.1980). Under that test, the court looks at the following factors: (1) whether the debtor and creditors relied upon the IRS's earlier proofs of claim or whether they had reason to know that subsequent proofs of claim would follow; (2) whether the other creditors would receive a windfall to which they are not entitled on the merits by the court not allowing the amendment to the IRS proof of claim; (3) whether the IRS intentionally or negligently delayed in filing the proof of claim stating the amount of taxes due; (4) the justification, if any, for the failure of the IRS to file for a time extension for the submission of further proofs of claim; and (5) whether or not there are any other considerations which should be taken into account in insuring a just and equitable result.

Applying the first factor, the Court finds that the original claim for income tax does not provide notice to the bankruptcy court or any interested party that a subsequent claim for a 100% assessed penalty for withholding taxes not paid by Dorothy W., Inc. would be forthcoming. Further, the amendment is not reasonably within the amount of the original $12,395.90 claim. In fact, the "amended" claim seeks an increase of $40,542.27.

■ The second factor announced in *Miss Glamour Coat* is whether the other creditors would receive a windfall to which they are not entitled as the result of the bankruptcy court not allowing this amendment to the IRS proof of claim. This Court agrees with that in *In re Norris Grain Company* that this factor is inappropriate in deciding whether to permit the untimely amendment. Such an analysis involves undue speculation and does nothing to promote the legislative goal of finality as to the bar date for filing claims. 81 B.R. 103, 108 (Bankr.N.D.Fla.1987) ("The bar date for filing proofs of claim ... is a mechanism intended by Congress to provide the debtor and its creditors with 'finality.' ")

■ The third and fourth factors focus on whether the creditor itself is at fault in failing to file a timely claim. Courts have generally refused to grant relief where the creditor's own internal procedures are the cause of its failure to timely file proofs of claim. *International Horizons*, 751 F.2d at 1216. In the present case, the IRS received notice that it had a potential 100% penalty claim against the debtor with the debtors' original schedule of debts in their chapter 13 petition and when the debtors' attorney served the IRS with notice of the amendment to add the potential 100% penalty claim related to another corporation. The original schedule and amendment were served early in the case. Further, the IRS itself had concluded its investigation leading to the 100% penalty assessment in December 1986, before the bar date. The IRS argues that its late-filed amendment is justified not only by the debtor not informing the investigating revenue officer that he was in a chapter 13 case, but that the

chapter 13 notice should have alerted them that the debtor was a corporate officer of Dorothy W., Inc. rather than merely identifying him as an employee of Dorothy W. Company. The notice of a chapter 13 case is not required to tell creditors how the debtor earns his income. Bankruptcy Rule 9009, Official Form 16. Further, the notice is not required to alert a creditor to what claims it may have; the creditor is responsible for determining what claims it may or may not have. Additionally, the IRS failed to timely move for an extension of time in which to file an amended claim. It knew as early as December 1986 that it intended to assess the penalty, but neglected to request the bankruptcy court for additional time.

### III. *Conclusion*

All of these factors indicate that the IRS had no good reason to delay filing the proof of claim seeking the 100% penalty. This Court is aware of no other considerations which should be taken into account in assuring a just and equitable result.

For the reasons stated above, the judgment of the bankruptcy court is hereby AFFIRMED.

SO ORDERED.