In the Matter of the MANSFIELD TIRE AND RUBBER COMPANY, et al., Debtors.

UNITED STATES of America, Plaintiff,

v.

The MANSFIELD TIRE AND RUBBER COMPANY, et al., Defendants.

No. C87–2641A.
Bankruptcy No. 679–1238.

United States District Court,
N.D. Ohio, E.D.

Oct. 2, 1990.

Joanne C. Rutkowski, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., William J. Kopp, Asst. U.S. Atty., Cleveland, Ohio, for plaintiff.

H. Jeffrey Schwartz, David W. Neel, Benesch, Friedlander, Coplan, & Aronoff, Cleveland, Ohio, David L. Simiele, Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Canton, Ohio, for defendants.

## ORDER

SAM H. BELL, District Judge.

This matter is before the court on appeal from the United States Bankruptcy Court for the Northern District of Ohio pursuant to 28 U.S.C. § 158. Appellant United States of America (hereinafter Appellant) has asserted that the bankruptcy court erred in granting summary judgment in favor of appellees, Co–Disposition Assets Trustees Samuel Krugliak and Richard L. Phillips (hereinafter Trustees). For the following reasons the order of the bankruptcy court is affirmed.

## STATEMENT OF FACTS

On October 1, 1979, the Mansfield Tire and Rubber Company and the Pennsylvania Tire and Rubber Company of Mississippi, Inc., filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Bankruptcy Code. On November 1, 1979, the Pennsylvania Tire Company also filed a petition under Chapter 11. The United States filed a proof of claim against the debtors, asserting *inter alia* unsecured priority claims in the amount of $363,111.20 for debtors' pension excise tax liability under § 4971(a) of the Internal Revenue Code for the tax years 1977, 1978 and 1979.

On December 30, 1985, the bankruptcy court confirmed a consolidated liquidating Chapter 11 plan of reorganization for the debtors. The Trustees filed an objection to the pension excise proof of claim on November 18, 1986. They asserted that the claim is not entitled to priority in distribution under 11 U.S.C. § 507(a)(6) (now and hereinafter § 507(a)(7)) as it constitutes a penalty rather than a tax, and that it should be subordinated pursuant to either 11 U.S.C. § 726(a)(4) or § 510(c) to the claim of general unsecured creditors. The Trustees then filed a motion for summary judgment on the same grounds.

On September 4, 1987, the bankruptcy court granted summary judgment, 80 B.R. 395, determining that the claim of the United States was not eligible for priority under 11 U.S.C. § 507(a)(7) and that the claim should be subordinated in distribution to the claims of general unsecured creditors pursuant to 11 U.S.C. § 510(c).

## ISSUES ON APPEAL

1. Did the bankruptcy court err in holding that excise tax assessments made pursuant to 26 U.S.C. § 4971 constitute penalties rather than taxes for purposes of 11 U.S.C. § 507(a)(7)?

2. Did the bankruptcy court err in subordinating the Internal Revenue Service's claim to those of general unsecured creditors pursuant to 11 U.S.C. § 510(c)?

## ANALYSIS

*A. The Bankruptcy Court Did Not Err in Construing Section 4971 Assessments as Penalties Rather Than Taxes.*

The challenged claims stem from assessments made pursuant to 26 U.S.C.

§ 4971(a) resulting from the debtors' failure to meet minimum funding requirements for the Mansfield Tire and Rubber Company's employees' pension plan. Section 4971 provides, in relevant part:

(a) *Initial Tax.* For each taxable year of an employer who maintains a plan to which section 412 applies, there is hereby imposed a tax of 10 percent (5 percent in the case of a multiemployer plan) on the amount of the accumulated funding deficiency under the plan, determined as of the end of the plan year ending with or within such taxable year.

.        .        .        .        .

(c) Liability for tax.—

(1) In general.— ... the tax imposed by subsection (a) or (b) shall be paid by the employer responsible for contributing to or under the plan the amount described in section 412(b)(3)(A).

Section 4971, in short, requires employers subject to ERISA law to meet a minimum funding standard for ERISA pension plans. "The purpose of the ERISA minimum funding requirements is to insure that pension plans will accumulate sufficient assets within a reasonable time to pay promised benefits to covered employees when they retire." *International Union v. Keystone Consolidated Industries, Inc.*, 793 F.2d 810, 813 (7th Cir.1986), *cert. denied* 479 U.S. 932, 107 S.Ct. 403, 93 L.Ed.2d 356.

Appellant, on appeal, contends that the correct way to characterize a § 4971 assessment is as an excise tax within the meaning of the Bankruptcy Code and thus it should be given priority under § 507(a)(7)(E). The Trustees claim that such assessments are nothing more than penalties disguised with the label "tax" and thus should not be given priority under the bankruptcy laws. It is clear that the Bankruptcy Code disallows penalty claims not in compensation for actual pecuniary loss to have priority under § 507(a). Section 507(a)(7)(G) allows only pecuniary loss penalties related to a § 507(a)(7) claim to have priority, while nonpecuniary loss penalties are subordinated to the claims of general unsecured creditors pursuant to 11 U.S.C.

§ 726(a)(4). Thus, the policy against punishing innocent creditors is retained from § 57(j) of the Bankruptcy Act of 1898 (debts owed to United States as penalty are disallowed "except for the amount of the pecuniary loss sustained ...."). *See also City of New York v. Feiring*, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941); *In re United Control Systems, Inc.*, 586 F.2d 1036 (5th Cir.1978); *In re Kline*, 403 F.Supp. 974 (D.Md.1975) *aff'd* 547 F.2d 823 (4th Cir.1977).

Section 507(a) of the Bankruptcy Code outlines the obligations of the debtor and estate entitled to priority in distribution and the order of priority. It provides, in relevant part:

(a) The following expenses and claims have priority in the following order:

.        .        .        .        .

(7) Seventh, allowed unsecured claims of governmental units; only to the extent that such claims are for—

.        .        .        .        .

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately proceeding the date of the filing of the petition.

11 U.S.C. § 507(a)(7)(E).

Appellant bases its claim that the § 4971 assessments are taxes within the meaning of § 507(a)(7)(E) rather than penalties on two theories. First, appellant claims that § 4971 assessments fit the definition given taxes by *Feiring*. The Supreme Court in *Feiring* defined "taxes" for purposes of the Bankruptcy Act as "pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it." *Feiring*, 313 U.S. at 285, 61 S.Ct. at 1029. The court below adopted this definition as part of the following four-part test to be used in

determining whether a particular assessment qualifies for treatment as a tax for bankruptcy law purposes. A tax is:

1. A voluntary pecuniary burden, regardless of name, laid upon individuals or property;

2. Imposed by, or under authority of the legislature;

3. For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; and

4. Under the police or taxing power of the governmental unit.

*See In re Farmers Frozen Food Company*, 221 F.Supp. 385, 387 (N.D.Calif.1963); *In re Lorber Industries of California, Inc.*, 675 F.2d 1062, 1066 (9th Cir.1982).

In arguing that the § 4971 assessments meet the third prong of this test and the *Feiring* definition, appellant claims that the "incidents" of the § 4971 obligation establish its character as a tax within the meaning of *Feiring*. Appellant also argues that the intention of Congress to create a tax under § 4971 is evidenced by the fact that Congress gave the "color and standing" of taxes to these obligations.

Appellant cites very little support for these conclusions. It relies on the fact that Congress entitled § 4971 "Taxes on Failure to Meet Minimum Funding Standard" and placed it in Subtitle D of the Internal Revenue Code under the heading "Miscellaneous Excise Taxes." Appellant also points to the fact that the § 4971 assessments are "self-assessing," meaning the amount assessable is definite and fixed once the deficiency amount is determined, and to the fact that the employer has all the rights of a taxpayer once the notice of deficiency is received. Finally, appellant gives significance to the fact that interest on the § 4971 excise tax begins to run on the last day prescribed for payment, a characteristic of taxes generally but not of penalties.

Appellant ignores the express congressional purpose behind § 4971 which was astutely recognized by the court below. The purpose is not to defray "the expenses of government or of undertakings authorized by it," but rather, the purpose is to inflict a penalty upon those employers who fail to meet the minimum funding requirement. A review of the legislative history of § 4971 establishes that, while Congress labeled this assessment an "excise tax," nonetheless its purpose is punitive in nature:

The committee bill also provides new and more effective *penalties* where employers fail to meet the funding standards. In the past, an attempt has been made to enforce the relatively weak funding standards existing under present law by providing for immediate vesting of the employee's rights, to the extent funded, under plans which do not meet these standards. This procedure, however, has proved to be defective since it does not directly *penalize* those responsible for the underfunding. For this reason, the committee bill places the obligation for funding and the *penalty* for underfunding on the person on whom it belongs—namely, the employer.

This is achieved by imposing an excise tax where the employer fails to meet the funding standards ...

.     .     .     .     .

Additionally, the committee believes that current *sanctions* on an employer for failure to adequately fund his qualified plan are inappropriate, since they may not affect an employer's decision to underfund his plan ... to resolve this problem, the committee's bill provides an excise tax on the failure to meet the minimum funding requirements.

S.Rep. No. 383, 93rd Cong., 2nd Sess. (1974 U.S.Code Cong. & Admin. News 4639, 4890, 4909–10, 4941). *See also* H.Rep. No. 807, 93rd Cong., 2nd Sess. (1974 U.S.Code Cong. & Admin. News 4670, 4694–95, 4763) (emphasis added). Obviously, the purpose of § 4971 is not to defray the expenses of government, but rather to penalize employers who underfund their pension plans.

Appellant's second theory is much more convincing and raises an interesting difficulty. Two cases are relied upon by appellant for the proposition that § 4971 assessments are taxes within the meaning of § 507(a)(7)(E): *In re A.C. Williams*, 81

B.R. 437 (Bkrtcy.N.D.Ohio 1986) and *In re Overly–Hautz*, 57 B.R. 932 (Bkrtcy.N.D. Ohio 1986), *aff'd* 81 B.R. 434 (N.D.Ohio 1987). The bankruptcy court below did not consider the import of these cases due to the fact that the issue of whether § 4971 liabilities are § 507(a)(7)(E) taxes was not directly controverted. *Matter of Mansfield Tire & Rubber Comp.*, 80 B.R. 395, 398 (fn. 3) (Bkrtcy.N.D.Ohio 1987).

In *Overly–Hautz*, at issue *inter alia* was whether § 4971 assessments would be entitled to administrative expense priority under § 507(a)(1). This section provides:

(a) the following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title

.    .    .    .    .

11 U.S.C. § 507(a)(1). Section 503(b) provides, in pertinent part:

(b) After notice and hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title ...

11 U.S.C. 503(b)(1)(B). The same issue faced the court in *Williams*.

The *Overly–Hautz* court denied administrative expense priority to the claimants while the *Williams* court granted it. The difference was that in *Overly–Hautz* the § 4971 liability was incurred prepetition, while in *Williams* it was incurred postpetition. It is well-settled that only taxes or other debts incurred postpetition can be administrative expenses under § 503(b)(1)(B). Prepetition taxes are not "incurred by the estate" due to the fact no estate exists prepetition. *See In re United Trucking Service, Inc.*, 851 F.2d 159, 161 (6th Cir.1988).

Appellant contends that for the court in *Williams* and *Overly–Hautz* to have reached the issue of whether the § 4971 liabilities would be deemed administrative expenses, it must have implicitly held that those liabilities are taxes and not penalties for § 507(a) priority purposes. Certainly, the aforementioned principle which disallows penalty claims from enjoying priority status and subordinates them to the claims of general unsecured creditors applies to § 507(a)(1) as well as § 507(a)(7). Simply put, penalty claims not in compensation for pecuniary loss are not meant to have priority. If a "tax" claim is truly a penalty and thus is denied § 507(a)(7) status, it obviously could never be placed within § 507(a)(1). Instead, it would be subordinated pursuant to § 726(a)(4) or § 510(c).

Appellant's argument is well reasoned and persuasive. Ultimately, however, the previously mentioned explicit legislative intent behind § 4971 prevails in this controversy. Thus, to the extent that the court in either *Williams* or *Overly–Hautz* concluded that § 4971 liabilities could be awarded priority under § 503(b)(1)(B) and § 507(a)(1), it was erroneous. Such "taxes" are penalties for § 507(a) purposes.

This conclusion is buttressed by a line of cases which have held likewise. *See In re Airlift International, Inc.*, 97 B.R. 664 (Bkrtcy.S.D.Fla.1989), *aff'd* 120 B.R. 597 (S.D.Fla.1990); *In re Wheeling–Pittsburgh Steel Corp.*, 103 B.R. 672 (W.D.Pa.1989); *In re Bertsch & Company, Inc.*, No. IP84–4366RA (S.D.In. Aug. 15, 1988) (LEXIS). These cases cite *Mansfield*, the very case under scrutiny here, as authority, and this court also believes the bankruptcy court below to be correct in its analysis as to the interplay between 26 U.S.C. § 4971 and 11 U.S.C. § 507(a).

*B. The Bankruptcy Court Did Not Err in Subordinating Appellant's Claim to Those of General Unsecured Creditors.*

■ Appellant recognizes the authority the bankruptcy courts possess to subordinate non-pecuniary loss penalty claims to those of general unsecured creditors. However, appellant argues that Congress intended § 4971 assessments to be taxes within the meaning of the Bankruptcy Code in order to avoid this result. It argues that the subordination of the pension

excise claim would create the incentive for corporations operating in bankruptcy to underfund their pension plans.

Appellant cites to no legislative history or other authority to support such an interpretation. Furthermore, the very premise upon which this argument is based, that Congress intended § 4971 liabilities to be taxes, has already been rejected. The legislative history clearly shows that Congress enacted § 4971 primarily for punitive purposes.

The bankruptcy court below held that 11 U.S.C. § 510(c) may properly be invoked to subordinate appellant's claim. § 510(c) provides:

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of another allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate.

The court based its reasoning upon a reading of *In re Colin*, 44 B.R. 806 (Bkrtcy.S.D. N.Y.1984). *Colin* held that a punitive damages claim could be subordinated under § 510(c) even though inequitable conduct on the part of the creditor was lacking, and based this holding on the legislative history of § 510(c):

It is intended that the term "principles of equitable subordination" follow existing case law and leave to the courts development of this principle. To date, under existing law, a claim is generally subordinated only if the holder of such claim is guilty of inequitable conduct, or the claim itself is of a status susceptible to subordination, *such as a penalty* or a claim for damages arising from the purchase or sale of a security of the debtor.

124 Cong.Rec. H11,089–H11,117 (Sept. 28, 1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6452 (emphasis added). *See also* 124 Cong.Rec. S17,403–S17,434

(Sept. 28, 1978), *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 6521. The court also based its holding on the principle that innocent creditors should not be made to suffer for the wrongdoing of the debtor:

If, in this case, punitive damages are to be paid, not by the alleged wrongdoer, but by his estate, the purpose of the penalty is not served. The effect would be to force innocent creditors sharing in the debtor's assets to pay for his wrongdoing. *Matter of GAC Corporation*, 681 F.2d 1295, 1301 (11th Cir.1982). Such a result is clearly untenable, and patently inequitable.

*Colin*, 44 B.R. at 810.

Two recent Circuit Court of Appeals have followed this line of reasoning, *In re Virtual Network Services Corp.*, 902 F.2d 1246 (7th Cir.1990), and *Schultz Broadway Inn v. U.S.*, 912 F.2d 230 (8th Cir.1990). In *Virtual Services Network Corp.*, the debtor filed for Chapter 11 bankruptcy relief. The IRS filed a proof of claim against the estate, part of which represented prepetition tax penalties which the IRS identified as a general unsecured claim. The bankruptcy court concluded that the equitable subordination principles did not operate in this case and ruled that the IRS' claims must be considered on a par status with other general unsecured creditors' claims. The district court reversed and ordered equitable subordination pursuant to § 510(c).

In affirming the district court, the Seventh Circuit disagreed with the IRS' contention that equitable subordination should only be imposed where there is some wrongful conduct on the part of the creditor, which had been the rule prior to the Bankruptcy Reform Act of 1978. The court found *In re Stirling Homex Corp.*, 579 F.2d 206 (2d Cir.1978), to be especially significant because the court there subordinated the claims of innocent defrauded shareholders to those of general unsecured creditors. *Stirling Homex Corp.* was decided a few months before passage of the Bankruptcy Act of 1978, and the *Virtual Network Services Corp.* court reasoned

that "the principal managers of the bill were aware of this decision and its implications prior to passage of the section." *Virtual Services Network Corp.*, 902 F.2d at 1249. *See also Airlift; In re Burden,* 109 B.R. 107 (E.D.Pa.1989); *In re Merwede,* 84 B.R. 11 (Bkrtcy.D.Conn 1988); *In re A.H. Robins Co., Inc.,* 89 B.R. 555 (E.D.Va. 1988); *In re Quality Sign Co., Inc.,* 51 B.R. 351 (Bkrtcy.S.D.Ind.1985).

Ultimately, *Virtual Services Network Corp.* held that it is the duty of the courts to interpret the meaning of "equitable subordination."

> After considering the congressional statements and legislative history and scheme, we agree with the district court that Congress intended the courts to "develop" the "principles of equitable subordination." We further conclude, as did the district court, that the principles of equitable subordination are broader than the doctrine which developed prior to § 510(c)(1)'s enactment. It is clear that equitable subordination no longer requires, in all circumstances, some inequitable conduct on the part of the creditor.

*Virtual Services Network Corp.,* 902 F.2d at 1249–1250.

In *Schultz,* the debtor filed for Chapter 11 relief and the government filed a proof of claim which included a negligence penalty for the underpayment of taxes. The bankruptcy court subordinated the negligence penalty to the claims of general unsecured creditors, and the district court affirmed.

In affirming the district court, the Eighth Circuit attached significance to the fact that "Congress ultimately rejected a Senate version of section 510(c)(1) that would have expressly exempted governmental tax claims from equitable subordination. S.Rep. No. 989, 95th Cong., 2d Sess. 74, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5860." *Schultz,* 912 F.2d at 232. The court also adopted the reasoning of *Virtual Services Network Corp.* regarding the significance of the *Stirling Homex Corp.* decision. *Id.,* 912 F.2d at 233. Furthermore, the court found

the aforementioned excerpt from the legislative history of § 510(c) to be telling, especially the remark that penalties are susceptible of subordination. *Id.,* 912 F.2d at 233.

Ultimately, the court concluded:

> Consequently, we agree with the district court that under the facts of this case the general unsecured creditors who suffered actual losses should receive preference over the Government's claim for a non-pecuniary loss tax penalty in this liquidating chapter 11. Certainly, this accords with the legislative history of the Bankruptcy Reform Act, which generally prefers claims for actual losses over purely punitive claims.

*Schultz,* 912 F.2d at 234. *See also Airlift; In re Burden,* 109 B.R. 107 (E.D.Pa.1989); *Bertsch; In re Merwede,* 84 B.R. 11 (Bkrtcy.D.Conn 1988).

In sum, the bankruptcy court below did not err in subordinating appellant's claim pursuant to 11 U.S.C. § 510(c).

## CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court below granting summary judgment is hereby AFFIRMED.