**In re Herbert Andy MILLER, Jr. &
Quindal Sue Miller, Debtors.**

**Bankruptcy No. 1–86–01972.**

United States Bankruptcy Court,
E.D. Tennessee.

Sept. 1, 1988.

Thomas E. Ray, Ray & North, Chattanooga, Tenn., for debtors.

Paul M. Predmore, U.S. Dept. of Justice, Tax Div., for I.R.S.

MEMORANDUM

RALPH H. KELLEY, Chief Judge.

Before the bar date for filing proofs of claims, the Internal Revenue Service filed a proof of claim against the chapter 13 debtors for personal income tax. After the bar date, the IRS amended the claim twice.

The first amendment added more personal income tax for another year.

The second amendment added a claim against one of the debtors, Mr. Miller, for a 100% penalty. The 100% penalty allows the IRS to collect from an officer of a corporation the unpaid employment taxes on the earnings of the corporation's employees. The IRS can collect the taxes, in the form of the 100% penalty, from any officer of the corporation who was responsible for withholding or paying the taxes and willfully failed to do so.

The chapter 13 debtors have objected to the second late amendment, the one that seeks to add the 100% penalty claim against Mr. Miller.

The debtors argue that the 100% penalty claim should be disallowed because the proof of claim was filed after the bar date and it does not relate back to the original proof of claim filed before the bar date. The debtors contend that the 100% penalty claim does not relate back because it is a completely different claim for a different kind of tax.

The amount of the 100% penalty claim is over $40,000. Though Mr. Miller has not admitted liability, the court assumes for the purpose of ruling on the objection that Mr. Miller is liable for the penalty.

The parties have stipulated most of the facts. The facts recited below also include the IRS's version of the dealings between its revenue officer and Mr. Miller during the audit that led to the 100% penalty; the IRS wants to make the point that Mr. Miller talked to the revenue officer several times during the audit but never mentioned the chapter 13 case, and this caused the IRS's failure to file a proof of claim for the penalty before the bar date or to ask for an extension. The facts are as follows.

One of the debtors, Mr. Miller, was an officer of a corporation known as Dorothy W., Inc. Dorothy W., Inc., filed a chapter 11 bankruptcy case on August 8, 1986.

Notice of Dorothy W.'s chapter 11 case was sent to the IRS's Special Procedures Section in Nashville, Tennessee. Since Dorothy W. owed employment taxes, the notice of the chapter 11 case provoked the IRS to begin an investigation to determine whether the 100% penalty should be assessed against any officer of the corporation.

The investigation was assigned to a local revenue officer, Mr. Zorn. The revenue officer first talked to Mr. Miller in early September, 1986, about a month after Dorothy W. filed its chapter 11 case. They agreed to meet later to discuss the 100% penalty.

The revenue officer first met with Mr. Miller on September 12, 1986. Mr. Miller's chapter 13 case was filed the same day. He did not tell the revenue officer that he was filing or had filed a chapter 13 case.

In the schedules filed with their chapter 13 petition, the debtors listed debts to the IRS for 1984, 1985, and 1986 income tax and a contingent debt for the 100% penalty arising from Mr. Miller's involvement with Dorothy W., Inc. The debts were scheduled as follows:

| Creditor | Amount | When Incurred |
|---|---|---|
| IRS | $2,895.00 | 1984 |
| IRS | 9,500.00 | 1985 |
| IRS | 9,000.00 | 1986 |
| IRS | 1.00 | Contingent claim on Dorothy W., Inc. withholding |

Notice of the debtors' chapter 13 case was also sent to the IRS Special Procedures Section in Nashville, Tennessee. The IRS admits receiving notice of the chapter 13 case.

The notice says, "The debtor is employed by Dorothy W. Company."

The notice set January 14, 1987, as the last day for filing proofs of claims.

Shortly after this notice was mailed, the debtor amended the schedule of debts as follows:

Internal Revenue Service
Special Procedures Section
P.O. Box 1107, Stop 31
Nashville, Tennessee 37202    $1.00
(Contingent liability for withholding of SVW, Inc.)

The debtor's attorney certified service of the amendment on the IRS on the same day that it was filed, September 30, 1986.

On October 3, 1986, the IRS filed a proof of claim for personal income tax owed by the debtor for the year 1984. The amount of the claim is $2,900.

The meeting of creditors was held as scheduled on October 16, 1986, and the court confirmed the plan on the same day. There were no objections by creditors or the chapter 13 trustee.

The plan provides for payment of priority claims in full in deferred cash payments. As to non-priority unsecured claims, the plan is a "remainder" plan, which means they will be paid the money left over after paying secured and priority claims.

During this period of time, the local revenue officer was continuing the 100% penalty investigation. He met with Mr. Miller again in November, 1986. Mr. Miller didn't tell the revenue officer that he had already filed a chapter 13 case.

The revenue officer completed his investigation in early December. He recommended that the 100% penalty be assessed against Mr. Miller.

In mid-December, 1986, the revenue officer telephoned Mr. Miller and told him that he had proposed assessment of the 100% penalty. Mr. Miller still didn't mention his chapter 13 case.

The revenue officer's group manager approved assessment of the penalty about the same time, mid-December, 1986. The recommendation was sent to a clerk to prepare a formal notice of assessment of the 100% penalty.

On December 22, 1986, the IRS amended its proof of claim to add personal income tax for the year 1985.

On December 29, 1986, the chapter 11 case of Dorothy W., Inc., was converted to a liquidation case under chapter 7.

The time for filing proofs of claims in the debtors' chapter 13 case ended on January 14, 1987. The IRS had not filed a proof of claim for the 100% penalty and had not asked for an extension of the time to file a proof of claim.

The proposed assessment was mailed to the debtor on February 23, 1987, about two months after the IRS had approved the proposal. The IRS says that the delay was due to the normal backlog of cases and the holiday season that intervened after approval of the proposed assessment.

The proposed assessment is as follows:

| Tax Period | Date Return Filed | 100% Penalty |
|---|---|---|
| 1/86—3/86 | 4–30–86 | $ 5,244.21 |
| 4/86—6/86 | 7–31–86 | 24,637.73 |
| 7/86—9/86 | 10–31–86 | 10,660.33 |
| | | $40,542.27 |

Dorothy W.'s employment tax returns were timely filed. The third quarter didn't end and the return was not filed until after both Dorothy W. and the debtors had filed their bankruptcy cases.

After Mr. Miller received the proposed assessment in late February, 1987, the debtors' attorney wrote a letter to the local revenue officer who did the penalty investigation. The letter is dated March 10, 1987. It notified the revenue officer that the debtors were in a chapter 13 case.

The revenue officer responded to the letter by calling the debtors' attorney and telling him that the penalty case had been turned over to the special procedures section in Nashville.

In May, 1987, the court entered a routine order allowing claims. It included the IRS's claim against the debtors for 1984 and 1985 personal income tax.

On June 24, 1987, the IRS amended the claim again to include 1986 personal income tax. This was the first amendment after the bar date. The debtors have not objected to it.

In July, 1987, Mr. Miller received a letter from the IRS service center in Memphis stating that the 100% penalty was being assessed. On July 15, 1987, the debtors' attorney responded with a letter informing the IRS that the debtors had filed a chapter

13 case in September, 1986. The Memphis IRS office forwarded the letter to the special procedures section in Nashville. On August 20, 1987, the IRS filed the amendment to its claim to add the 100% penalty.

The debtors filed their objection shortly thereafter.

### Discussion

Both the debtors and the IRS rely on the district court's decision in *In re Miss Glamour Coat Co., Inc.,* 80–2 U.S. Tax Cas. (CCH) ¶ 9737, 46 A.F.T.R. 2d (P–H) ¶ 6083 (S.D.N.Y.1980).

In that case the IRS filed a timely proof of claim for about $1,100 in employment taxes. The IRS filed a series of amendments after the bar date; the amendments added more than $100,000 in corporate income tax to the claim. The bankruptcy court did not allow the late amendments to relate back. It relied partly on the fact that the amendments sought to add a different kind of tax from the tax included in the timely proof of claim.

The district court remanded on the ground that the bankruptcy court had applied the wrong standard for determining whether the amendments should relate back. The district court held that the standard for determining whether an amendment to a proof of claim relates back should be the same as the standard for determining whether an amendment to a complaint relates back. That standard is set out in Rule 15(c) of the Federal Rules of Civil Procedure.

Under Rule 15(c), the question of whether an amendment relates back usually arises when the sequence of events is (1) complaint filed, (2) statute of limitations runs, (3) amendment filed. The defendant in that situation argues that the amendment must be dismissed because recovery is barred by the statute of limitations. The plaintiff argues that the statute of limitations is not a defense because the amendment relates back to when the complaint was filed before the limitation arose.

Rule 15(c) provides that the amendment relates back if it is based on the same conduct, transaction or occurrence set forth or attempted to be set forth in the complaint. This rule is based on the warning effect of the complaint. The complaint warns the defendant that the plaintiff may amend to add other claims based on the conduct, transaction, or occurrence set forth or attempted to be set forth in the original complaint. The defendant can not reasonably rely on the running of the statute of limitations after the complaint was filed as a defense to a later amendment based on the general fact situation set forth in the complaint. 3 J. Moore, Moore's Federal Practice ¶ 15.15[3] (2d ed. 1987).

In the *Miss Glamour Coat* decision, the district court directed the bankruptcy court to several equitable considerations relevant under Rule 15(c):

(1) whether the bankrupt and creditors relied upon the IRS's earlier proof of claim or whether they had reason to know that a subsequent proof of claim would follow pending completion of an audit;

(2) whether other creditors would receive a windfall to which they are not entitled on the merits if the court disallows the amendment;

(3) whether the IRS intentionally or negligently delayed in filing the amendment;

(4) the justification, if any, for the IRS's failure to ask for an extension of time to file a later proof of claim after an audit; and

(5) any other considerations that should be taken into account in reaching a just and equitable result.

The court agrees that the general principle of Rule 15(c) should apply in determining whether an amendment to a proof of claim relates back. The court is concerned, however, with the manner of applying the equitable considerations. What is the relative importance of each in light of the important differences between a statute of limitations and the bar date for filing claims in a bankruptcy case?

A statute of limitations is intended to bar the claim of one person against another

because of the passage of time. 51 Am. Jur.2d, Limitation of Actions § 16 (1970).

Furthermore, a potential defendant does not notify the potential plaintiff or anyone else that suit must be brought before the statute of limitations has run or the suit will be barred. The statute of limitations is simply "out there."

A bankruptcy case, however, deals with a particular group of claimants, all the debtor's creditors. The debtor is required to identify them all. 11 U.S.C. § 521(1); Bankr.Rule 1007. The court then sends notice of the bankruptcy case to each creditor with notice that it must file a proof of claim before the bar date. Bankr.Rules 2002(f) & 3002.

The bar date is not imposed simply to benefit the debtor by barring claims due to the passage of time. The bar date is imposed so that the bankruptcy case can be administered. Each creditor is required to file its proof of claim early in the bankruptcy case so that the other creditors and the bankruptcy trustee, who acts on behalf of all creditors, will know what claims must be dealt with in the case. *In re Arrow Air, Inc.*, 75 B.R. 375 (Bankr.S.D.Fla.1987). There are almost no excuses, other than lack of notice, that allow the late filing of a proof of claim. 8 L. King, Collier on Bankruptcy ¶ 3002.05[1] (15th ed. 1988).

Of course, the strict rules against late claims are relaxed when the creditor has filed a timely proof of claim and the question is whether an amendment should relate back. The creditor, however, is still in a less sympathetic situation than it would be if the court were dealing with an amendment to a complaint. Whether to allow an amendment to a proof of claim does not involve only a plaintiff and a defendant. Notice of the bar date is notice to the creditor to file a proof of claim before the bar date for *all* its claims. Other creditors and the bankruptcy trustee are entitled to expect each creditor to make a diligent effort to file a timely proof for every claim it has.

When the claimant is the IRS, the trustee and other creditors are also entitled to expect the IRS to ask for an extension of the time to file a proof of claim if it needs more time. The government is the only creditor that is competent to file claims for itself but can obtain an extension of the time to file so that it can complete the auditing or accounting necessary to file a proof of claim. Bankr.Rule 3002(c).

■ The court does not mean that an amendment to a tax claim can never relate back. However, a tax creditor has the ability to alert the trustee and other creditors to possible additional claims by requesting an extension of the time to file a proof of claim. Since asking for and obtaining an extension is not overly burdensome, a tax claimant should request an extension when there is doubt as to whether the additional claims will relate back or not. Likewise, the question of whether or not an amendment relates back must be considered against this background. The court may be justified in taking a narrower view of what amendments to tax claims are true amendments that relate back as opposed to late claims for different taxes. *In re Butcher*, 74 B.R. 211, 16 Bankr.Ct.Dec. 47 (Bankr. E.D.Tenn.1987).

■ The debtor, of course, knew from the beginning of this chapter 13 case that the IRS was considering a claim for the 100% penalty. Likewise, the bankruptcy trustee and any creditor who read the schedules knew of the IRS's potential claim for the 100% penalty.

This knowledge by the debtor, the bankruptcy trustee, and other creditors does not lead to the conclusion that the 100% penalty claim should be allowed as an amendment that relates back.

■ The trustee and other creditors are generally entitled to expect each creditor to file proof of all its claims before the bar date. This is especially true for the IRS since it can obtain an extension of the time to file a proof of claim.

When a creditor files a timely proof of one claim but not of another scheduled claim, the trustee and other creditors can, as a general rule, take the failure to file as proof that the creditor does not have or will

not pursue the omitted claim. Their knowledge of the omitted claim does not mean that an amendment to add it automatically relates back.

■ Likewise, the windfall to other creditors when a late amendment is disallowed does not justify allowing all late amendments, even amendments to add claims that the trustee or other creditors were alerted to by the schedules or prior experience.

This brings the court back to Rule 15(c). The first question should be whether the timely proof of claim *by itself* gave fair notice of the potential claim that the creditor wants to add by a late amendment. This question should be answered first without regard to whether the debtor, the trustee, or other creditors had notice before the bar date of the potential claim. This will eliminate amendments that are totally unrelated to the timely proof of claim.

■ The knowledge of the trustee, the debtor, or other creditors of the potential claim before the bar date will be relevant only when there is some weak relationship between the amendment and the timely claim. In that situation the trustee's and the other creditors' notice of the potential claim weighs in favor of allowing the amendment to relate back.

■ This court does not subscribe to the view that when federal government files a timely proof of claim for tax, then all amendments to add other taxes will relate back unless some change in circumstances, other than the passing of the bar date, makes allowance of the amendment unfair or unworkable. The district court didn't go that far in *Miss Glamour Coat;* all the taxes in that case were incurred by the debtor corporation in the ordinary course of doing business as a corporation.

■ The timely proof of claim in this case was for 1984 and 1985 personal income tax. The 100% penalty is based on Mr. Miller's service as officer of a corporation and his alleged failure to withhold or pay employment taxes for 1986. There could be a factual connection between these claims if Mr. Miller's debt for personal income tax were based on income he earned from the corporation at the same time that he allegedly was failing to collect or pay the corporation's employment taxes. In this case, however, the years do not overlap. The timely proof of claim was for 1984 and 1985 personal income tax, but the 100% penalty claim is for 1986 employment taxes. Furthermore, there was no proof that the debtor was employed at the corporation in 1984 and 1985.

The court concludes that the 100% penalty claim is not based on the same conduct, transaction, or occurrence as the timely proof of claim for personal income tax. The timely proof of claim was not by itself any warning of the possible claim for the 100% penalty. *In re Simms,* 40 B.R. 186 (Bankr.N.D.Ga.1984); see also *In re Solari,* 63 B.R. 115 (Bankr. 9th Cir.1986); *In re Overly–Hautz Co.,* 57 B.R. 932, 14 Coll. Bankr.Cas.2d 360 (Bankr.N.D.Ohio 1986), aff'd 81 B.R. 434 (N.D.Ohio 1987).

■ The IRS could argue that the late amendment to add 1986 personal income tax relates back, and so, the amendment to add the 100% penalty for 1986 should relate back to the late amendment. Allowing this double relation back does not make sense. The question is whether a late claim should relate back to a timely claim. The court must consider the relationship between the timely claim and each late claim separately, not the relationship between late claims. Thus, the amendment to add the 100% penalty does not relate back unless there is some extraordinary ground for allowing it.

■ The IRS believes there is justification for allowing the amendment because Mr. Miller, after he filed his chapter 13 case, talked to a revenue officer several times during the 100% penalty audit but never told the officer he was in a chapter 13 case.

The court has no idea whether Mr. Miller was intentionally trying to mislead the IRS. The IRS received notice of his chapter 13 case. For all the court knows, Mr. Miller may have assumed that the IRS knew of the chapter 13 case and would do whatever it needed to make a valid claim in the

chapter 13 case. At worst, Mr. Miller may have done the minimum required by law—he gave the IRS formal notice of the case—but he didn't go out of his way to help the IRS. Mr. Miller's participation in the audit does not justify allowing a late claim or amendment. *In re AM International, Inc.,* 67 B.R. 79 (N.D.Ill.1986).

■ The IRS obviously has difficulty filing timely 100% penalty claims in the few chapter 13 cases involving corporate officers. The IRS's internal problems, however, do not justify allowing a late claim or amendment. *In re Arosemena,* 65 B.R. 246, 14 Bankr.Ct.Dec. 1377 (Bankr.M.D.Fla. 1986). The IRS complains that the chapter 13 notice should have alerted it that Mr. Miller was a corporate officer of Dorothy W., Inc., rather than identifying him as an employee of Dorothy W. Company.

■ The notice of a chapter 13 case is not required to tell creditors how the debtor earns his income. Bankr.Rule 9009; Official Form 16. The notice also is not required to alert a creditor to what claims it may have. The creditor is responsible for determining what claims it has.

Furthermore, the IRS received notice in this case that it had a potential 100% penalty claim against Mr. Miller when the debtor's attorney served it with notice of the amendment to add the potential 100% penalty claim related to another corporation. The amendment was served early in the case. The court does not see how the IRS could have ignored it except by oversight.

The court suspects that a more logical procedure for the IRS would be to work from the other direction; once a 100% penalty investigation is provoked by the corporation's bankruptcy, the IRS can check its records and the court's records to see if a case has been filed by an officer who is the subject of the 100% penalty investigation. Of course, the investigating revenue officer can always ask a corporate officer if he has filed a bankruptcy case.

The final question is whether all or part of the penalty should be allowed as a postpetition claim under Bankruptcy Code § 1305(a)(1). 11 U.S.C.A. § 1305(a)(1).

■ The IRS at one point argued that all the 100% penalty claim is a claim for "postpetition" taxes—taxes incurred by Mr. Miller during the chapter 13 case—which is allowable under Bankruptcy Code § 1305. As to the penalty for the first two quarters of 1986, the law on this point is clearly against the IRS and in Mr. Miller's favor.

For the first two quarters of 1986, the corporation had filed the employment tax returns before Mr. Miller filed his chapter 13 case. The employment taxes for those two quarters were due. Assuming Mr. Miller is liable for the 100% penalty, he was liable then, before he filed his chapter 13 case.

■ All that remained was for the IRS to examine the facts and determine that he was liable. This is exactly the kind of situation in which the deadline for filing a proof of claim is supposed to spur the IRS to speed up its processes or obtain an extension of time to file a proof of claim. The IRS's need to investigate the prepetition facts before it decides to assess a tax or a penalty does not convert a contingent, disputed, or unliquidated claim for prepetition taxes into a claim for postpetition taxes. 11 U.S.C. §§ 507(a)(7), 502(i), & 101(4), (11); see, e.g., *In re Easton,* 59 B.R. 714 (Bankr.C.D.Ill.1986); *In re Overly–Hautz Co.,* 57 B.R. 932, 14 Coll.Bankr.Cas.2d 360 (Bankr.N.D.Ohio 1986); *In re Starkey,* 49 B.R. 984 (Bankr.D.Colo.1984); *In re Sapienza,* 27 B.R. 526, 10 Bankr.Ct.Dec. 358 (Bankr.W.D.N.Y.1983); *In re Phillips,* 27 B.R. 94, 10 Bankr.Ct.Dec. 4 (Bankr.E.D.Va. 1983).

Thus, the 100% penalty claim for failure to pay employment taxes for the first two quarters of 1986 is a prepetition claim that is barred by the IRS's failure to file a timely proof of claim. This leaves only the question of whether the 100% penalty based on the failure to pay employment tax for the third quarter of 1986 is partly or entirely a postpetition claim.

The third quarter penalty raises a more difficult question because Mr. and Mrs. Miller filed their chapter 13 case in September,

1986, before the end of the third quarter— before the employment tax return was due and apparently before payment of the employment taxes was due.

The third quarter tax and the 100% penalty might be split into prepetition and postpetition portions; the tax or the penalty would be a prepetition claim to the extent they are based on payments to employees before the Millers filed their chapter 13 case.

The court has several questions about this result. Does the court's decision in *In re Ryan* mean that the entire third quarter claim should be treated as a postpetition tax claim under Bankruptcy Code § 1305(a)(1)? *In re Ryan*, 78 Bankr. 175 (Bankr.E.D.Tenn.1987). If Mr. Miller's liability for the penalty is conditional on the corporation's failure to pay, does this make any difference to whether the third quarter penalty is a prepetition claim or postpetition claim under § 1305(a)(1)? In this same regard, does it make a difference that the penalty is not only for failure to pay but also for failure to withhold employment taxes? Should the court simply disallow the penalty as an amendment but leave the IRS the option to file a claim for the third quarter penalty as a postpetition claim? Along the same line, should the court decide the question now or would a decision be premature, since it is not clear whether the Miller's chapter 13 plan is meant to deal with the third quarter penalty or any other tax as a postpetition claim under § 1305(a)(1)?

Though the IRS has filed a short brief on the point, the court will allow the parties to brief the issue again before making a final decision.

As to the penalty for the first two quarters of 1986, the court will disallow the amendment and will provide that the order will be final as to that portion of the amendment. It is by far the greater portion of the amendment, and the parties, including other creditors, need a final, appealable decision so that they will know where they stand in the chapter 13 case.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.