**In re Rex & Helen OSBORNE f/d/b/a The Original Hamberger Stand #7 f/d/b/a Tommies Hambergers, Debtor.**

**Bankruptcy No. SB91–18247 MG.**

United States Bankruptcy Court,
C.D. California,
San Bernardino Division.

Oct. 8, 1993.

572

Shannon Haney, Trustee, Santa Ana, CA.

Marc J. Winter, Taylor, Simonsen & Winter, Claremont, CA.

Thomas D. Coker, Asst. U.S. Atty., Los Angeles, CA.

### MEMORANDUM & ORDER

MITCHEL R. GOLDBERG, Bankruptcy Judge.

On June 16, 1993, this matter came before the Court for hearing on the debtor's objection to the Internal Revenue Service's Supplemental Claim and Amendment to Proof of Claim No. 4 filed on April 10, 1992 and November 30, 1992. For the reasons set forth below, I sustain the objection in part and overrule the objection in part. This decision memorializes the reasoning and conclusions of law that the Court presented in its ruling at the June 16th hearing.

### FACTS

The facts in this case are not in dispute. Rex and Helen Osborne ("debtors" or "Osborne") filed a joint petition for relief under Chapter 13 of the Bankruptcy Code on July 24, 1991. The debtors listed their respective social security numbers, as well as the employer identification number ("EIN") for their business. In their petition, the debtors scheduled, as priority unsecured debt, income and payroll taxes for tax years 1985 through 1987 in the amount of $9,228 and income taxes for tax years 1989 through 1990 in the amount of $16,000.

On September 6, 1991, the Court noticed all parties in interest of the scheduled dates for (1) the meeting of creditors, (2) the confirmation hearing and (3) the claims bar date. The Court set the bar date for filing timely proof of claims for December 31, 1991.

In the Chapter 13 plan that the debtors submitted to the Court, they provided for the IRS, as an unsecured priority claim, to be paid in full the amount indicated in the schedules ($25,228.00). The Court confirmed the debtors' plan on October 2, 1991.

On December 24, 1991, the IRS timely filed a proof of claim in the amount of $11,764.10 for personal income taxes for taxable years 1985 through 1989. The amounts due for the years 1988 and 1989

were based on estimated liability. The IRS did **not** include any claims for federal payroll taxes on this timely filed claim.

On April 10, 1992, the IRS filed a "supplemental" claim in the amount of $31,470.32 for personal income taxes for taxable years 1986 through 1990. Again, the IRS did not include any payroll taxes on this supplemental claim. On November 30, 1992, however, the IRS filed a claim in the total amount of $214,287.69, identifying it as an amendment to the April 10th claim. This claim listed personal income tax liabilities for tax years 1985 through 1990 and federal payroll taxes for various taxable periods during tax years 1983 through 1986.

The debtors objected to both the supplemental and the amended claims on several grounds. First, debtors objected to the inclusion of the year 1990 in the supplemental claim, since it did not appear on the original proof of claim. Second, the debtors disputed the supplemental claim, since the IRS dramatically increased the amounts due for tax years 1989 and 1990. Finally, the debtors argued that the portion of the amended claim related to payroll taxes should not be allowed because it was untimely filed since those taxes were of a dissimilar kind, type and nature.

In its response papers, the IRS contended that all the taxes stemmed from the same generic origin and therefore, all of its amendments must be allowed. In addition, the IRS asserted that even if it filed its priority claim regarding payroll taxes untimely, the Court could not disallow priority unsecured claims under 11 U.S.C. § 502.

## ISSUES

From the parties' respective pleadings, I limited the matter to two issues, which were addressed at the hearing on June 16, 1993. The first issue is whether the amended IRS claims included taxes from the same generic origin or whether the taxes were of a type dissimilar in kind from those taxes in the original timely filed proof of claim. The second issue is whether the Court, under 11 U.S.C. § 502, must allow the IRS claims as unsecured priority

claims notwithstanding the fact that the amended proof of claims are untimely.

I have determined that the IRS could amend the claim for income taxes, since these were the type of taxes included in the timely filed proof of claim. All amended claims for federal payroll taxes, however, I disallowed as untimely.

## TYPE OF TAX

A creditor is permitted to file a proof of claim after the bar date when the proof of claim is an amendment to a timely filed claim but not when the proof constitutes a separate and distinct claim. *Menick v. Hoffman*, 205 F.2d 365, 368 (9th Cir.1953). The IRS relies on *Menick* to support its position that the November 30, 1992 proof of claim is allowable as an amendment to its April 30, 1992 proof of claim. In *Menick*, The IRS timely filed a proof of claim representing withholding taxes for the first quarter of 1950 ($510) and federal insurance contribution act taxes for the first quarter of 1950 ($84). Six months after the bar date and without a request for an extension of time to file a claim, the IRS field an "amended additional claim" for income taxes due in the amount of $5,215.32. *Id.*

The *Menick* court found that the amended claim was not "an entirely new, different, separate and distinct claim" of the United States. *Id.* at 368. The court noted that the initial claim "was for unpaid income taxes although the instrument itemizes the nature of the tax as 'withholding'" tax. *Id.* "Withholding taxes," the court explained, "are income which the employer must deduct from the wages of employees and for the payment of which tax the employer is liable to the government." *Id.* Thus, the court concluded, "[b]oth are demands of the same generic origin" and "[t]here is no change in the basic ground for recovery that is set out in the earlier claim on file ..." *Id.*

The court also observed that "the text of each of the two verified statements of indebtedness expressly show a conjoint and correlative nature of the debt to be the

internal revenue taxes due to the United States." *Id.* Furthermore, the court found that "the questioned claim ... contains only a statement of additional items amplifying a species of tax relationship and obligation that was asserted in the original claim and continued to exist between the bankrupt and the sovereign taxing authority relative to internal revenue taxes." *Id.*

According to the IRS, *Menick* applied a very broad reading of "taxes" to the claims before it. Therefore, because the federal employment taxes in the November 30, 1992 proof of claim are of the same general origin as the income taxes filed in the original claim, the claim should be allowed as an amendment.

Bankruptcy courts, however, have been reluctant to extend *Menick* beyond the particular facts involved. *See, e.g., In re International Horizons, Inc.,* 751 F.2d 1213, 1217 (11th Cir.1985) (affirmed bankruptcy court's decision to confine *Menick* to its facts).

Most notable is the Ninth Circuit Bankruptcy Appellate Panel's ("BAP") decision *In re Solari,* 63 B.R. 115, 116 (9th Cir.BAP 1986), in which the court expressly denied the application of *Menick* to the facts before it. In *Solari,* a Chapter 7 case, the State of California Employment Development Department timely filed a claim for payroll taxes for $831.62. *Solari,* 63 B.R. at 116. Subsequent to the bar date, the state filed a first amended claim for $5,882.36 that included a claim of the California Board of Equalization for sales and use taxes in the amount of $4,750.74. *Id.*

The BAP found that the two claims did not stem from the same generic origin because the timely filed claim was "for non-revenue contributions collected solely to fund unemployment compensation." *Id.* The late claim, on the other hand, "encompassed sales and use taxes raised as revenue to finance state government." *Id.*

Thus, the court distinguished the taxes based on their underlying purposes. The BAP concluded that the Board of Equalization, who did not file a timely claim, was "seek[ing] to ride the coattails" of the Director of the Employment Department. *Id.* at 117.

In addition, the BAP instructed that Federal Rule of Civil Procedure 15 provided a useful analogy. *Id.* The court observed that "[a]lthough the Ninth Circuit has not explicitly adopted Fed.R.Civ.Proc. Rule 15(c)[1] as the standard governing the relation back of untimely amended proof of claims, it has effectively done so." *Id.* (citing *In re Westgate–California,* 621 F.2d 983 (9th Cir.1980)). The court explained that according to Fed.R.Civ.Proc. Rule 15(c) "an amended pleading relates back to the date of the original pleading whenever the claim or defense asserted in the amendment rises out of the same conduct, transaction, or occurrence set forth in the original pleading." *Id.*

The BAP determined that, under Rule 15(c), there was "nothing in the timely filed claim for the contributions to fund unemployment compensation that gives fair notice to the trustee that a different entity, the Board of Equalization, would be making a claim for sales and use taxes." *Id.* Furthermore, the court found that "the State Board's claim does not purport to cure a claim defect in the timely filed claim, nor does it describe the claim with greater particularity." *Id.*

Other courts, both before and after the *Solari* court's decision, have decided that Fed.R.Civ.Proc. 15(c) applies in determining whether an amendment to a proof of claim should relate back to the original claim. For example, in *In re International Horizons, Inc.,* 751 F.2d 1213, 1214 (11th Cir. 1985), which the *Solari* court cited with approval, the Eleventh Circuit affirmed the bankruptcy and district court's decisions to

**1.** Fed.R.Civ.Proc. Rule 15(c) provides in pertinent part:

> **Relation back of Amendments.** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to

be set forth in the original pleading, the amendment relates back to the date of the original pleading....

The Federal Rules of Bankruptcy Procedure incorporates Fed.R.Civ.Proc. Rule 15 in Bankruptcy Rule 7015.

disallow an amended claim in a Chapter 11 case. *International Horizons* involved a timely filed IRS claim for withholding taxes and Federal Unemployment Tax Act ("FUTA") taxes, and an amendment of corporate income taxes. *International Horizons*, 751 F.2d at 1214–15.

The bankruptcy court in *International Horizons* established the standard for determining whether a late filed claim should relate back. The court indicated that "in a bankruptcy case, amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *Id.* at 1216 (citations omitted). A court must, however, "subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment." *Id.* (citations omitted).

Furthermore, the court explained that traditionally an "amendment is permitted only where the original claim provided notice to the court of the existence, nature, and amount of the claim and that it was the creditor's intent to hold the estate liable." *Id.* at 1217 (citations omitted). Accordingly, "an amendment which states a new claim based upon a different set of facts or circumstances will not be deemed to relate back to the original pleading." *In re Simms*, 40 B.R. 186, 189 (Bankr.N.D.Ga. 1984).

The court in *International Horizons* also stated that "[i]t is well established that the bankruptcy court is guided by the principles of equity and that the court will act to assure that 'fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.'" *International Horizons*, 751 F.2d at 1216 (citing *Pepper v. Litton*, 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939)).

The *International Horizons* court found that the application of Rule 15(c) requires the review of several equitable considerations and it adopted those set forth in *In re Miss Glamour Coat Co., Inc.*, 80–2 T.C.M. (CCH) P9737, 1980 WL 1668 (S.D.N.Y.1980). *See also In re Overly–Hautz Company*, 57 B.R. 932, 936 (Bankr. N.D.Ohio 1986) (court must balance equities to determine appropriateness of an amendment) (citing *In re Gibraltor Amusements, Ltd.*, 315 F.2d 210 (2d Cir. 1963)).

*Miss Glamour* directs the consideration of the following:

(1) whether the bankrupt and creditors relied upon the IRS' earlier proof of claim or whether they had reason to know that a subsequent proof of claim would follow pending completion of an audit;

(2) whether other creditors would receive a windfall to which they are not entitled on the merits if the court disallows the amendment;

(3) whether the IRS intentionally or negligently delayed in filing the amendment;

(4) the justification, if any, for the IRS' failure to ask for an extension of time to file a later proof of claim after an audit; and

(5) any other considerations that should be taken into account in reaching a just and equitable result. *In re Miss Glamour Coat Co., Inc.*, 80–2 T.C.M. (CCH) P9737, 1980 WL 1668 (S.D.N.Y.1980)

Essentially, *International Horizons* and decisions following it, require a two-step analysis in deciding whether an amendment to a timely filed original claim is valid. A court must determine, first, whether the new claim filed after the bar date bears a reasonable relationship to the original filing and, second, whether the balancing of equities supports the allowance of the new claim. *See generally, In re Robert Stone Cut Off Equipment and Bentley Weldery & Machiner Co.*, 98 B.R. 158, 160 (Bankr.N.D.N.Y.1989); *In re Miller*, 90 B.R. 317, 321 (Bankr.E.D.Tenn. 1988); *In re Overly–Hautz Co.*, 57 B.R. 932, 936–37 (Bankr.N.D.Ohio 1986); *In re Simms*, 40 B.R. 186, 190 (Bankr.N.D.Ga. 1984).

■ A review of the relevant facts in the instant case, in accordance with the principles described in *Solari* and *International Horizons*, clearly demonstrates that the amendments relating to federal employment taxes should not be permitted because the taxes are completely dissimilar. The taxes at issue in the instant case differ with respect to who is taxed, the manner in which the tax is calculated, and the theory underlying imposition of the tax.

The debtor's liability for its income taxes arises under § 1 (or 11) of the Internal Revenue Code.[2] The tax is imposed on the taxpayer's income. *See, generally, Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431, 75 S.Ct. 473, 477, 99 L.Ed. 483 (1955).

■ In contrast, liability for withholding taxes arises under § 6672[3] of the Internal Revenue Code. Section 6672 imposes liability on any entity charged with the responsibility of collecting a tax owed by a third party. The withholding amount is calculated based on the wages of the employee taxpayer, subject to various adjustments contained in § 3402. Thus, the employee is the taxpayer, the employer has a duty to collect and remit. Liability arises only for failure to remit amounts that should be withheld.

**2.** 26 U.S.C.A. § 1 (West 1993).

**3.** 26 U.S.C.A. § 6672(a) (West 1993) provides:

(a) General rule. Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 or part II of subchapter A of chapter 68 for any offense to which this section is applicable.

**4.** 26 U.S.C.A. § 3301 (West 1993) provides:

There is hereby imposed on every employer (as defined in section 3306(a)) for reach calendar year an excise tax, with respect to having individuals in his employ, equal to—

■ The FUTA and FICA taxes are also different in kind from income taxes. Liability for the employer's portion of FUTA and FICA taxes arises under sections 3301[4] and 3111(a)[5] of the Internal Revenue Code. As with income taxes, the employer is the taxpayer, but the tax is an *excise* tax on wages paid. It is not a direct tax on the employer per se, but rather a tax on the privilege of establishing and maintaining the employer/employee relationship. *Charles C. Steward Mach. Co. v. Davis*, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937); *Jones v. Goodson*, 121 F.2d 176 (D.Okla.1941). As such, FUTA and FICA taxes have no relationship to income taxes. In fact, the debtor could incur liability for these taxes, whether or not the debtor was subject to any income tax liability.

Furthermore, the IRS records income taxes under an individual's social security number, but records payroll taxes under an EIN number. The IRS even requires different forms when filing a return—941 form for employment taxes and 1040 form for income taxes. These facts persuade the Court that there is no reasonable relation between different types of taxes, although a reasonable relation does exist between income taxes for different years.

■ Moreover, I find that under the *Miss Glamour* equity considerations, the

(1) 6.2 percent in the case of calendar years 1988 through 1996; or
(2) 6.0 percent in the case of calendar year 1997 and each calendar year thereafter;
of the total wages (as defined in section 3306(b)) paid by him during the calendar year with respect to employment (as defined in section 3306(c)).

**5.** 26 U.S.C.A. § 3111(a) (West 1993) provides:

(a) Old-age, survivors, and disability insurance. In addition to other taxes, there is hereby imposed on every employer an excise tax, with respect to having individuals in his employ, equal to the following percentages of the wages (as defined in section 3121(a)) paid by him with respect to employment (as defined in section 3121(b))—

| In case of wages paid during: | The rate shall be: |
|---|---|
| 1984, 1985, 1986, or 1987 | 5.7 percent |
| 1988 or 1989 | 6.06 percent |
| 1990 or thereafter | 6.2 percent. |

late filed claim for employment taxes also fails to qualify as a valid amendment. The debtors diligently listed both income and payroll tax liability in their schedules, which properly put the IRS on notice to both types of taxes. When the IRS filed its first proof of claim and did not request any extensions for further investigation, the debtors reasonably relied on the proof of claim as the IRS' statement of its claim.[6]

In balancing the equities as it pertains to the late filed claims of the IRS listing the subsequent year of 1990 income tax, I note that the IRS claim was filed within a year of the original claim. I find this to be within a reasonable period. The IRS should be allowed to amend a timely filed proof of claim to add subsequent years. In addition, the fact that the IRS filed a proof of claim for income taxes put the debtors on notice that the IRS might augment its claim, especially where it only listed estimated liability. Therefore, equitable principles reinforce a finding that the IRS may amend its original proof of claim for income taxes to include income taxes due for other years not initially listed.

This decision comports with those that other courts have rendered when applying the *Solari* and *International Horizons* principles. Particularly compelling is the decision of *In re Simms*, 40 B.R. 186 (Bankr.N.D.Ga.1984) since it involved a Chapter 13 debtor and a strikingly similar fact pattern. Relying on *International Horizons*, the *Simms* court concluded that the supplemental claim listing federal income tax for different years than were asserted in the timely filed claim should relate back to the time the original claim was filed. *Simms*, 40 B.R. at 190. The court delineated the factors that weighed in favor of this result, which included the fact that "the timely-filed claim for federal income taxes indicated an intent on the part of the IRS to hold the [d]ebtor liable for past-due federal income taxes ..." *Id.* Also, the debtor's Chapter 13 plan "proposed to pay in full all priority tax claims."

*Id.* Finally, the debtor "did not file a tax return for the years 1977 through 1980 until late in 1981." *Id.*

The *Simms* court, however, did not allow an untimely IRS claim asserting a 100% penalty for nonpayment of federal employment and withholding taxes. The court found that the timely filed claim for the debtor's individual federal income tax liability "evinced no intent to hold the [d]ebtor's liable for the penalty assessed against a defunct corporation for federal employment and withholding taxes." *Id.*

Another persuasive Chapter 13 case involving facts similar to the instant case is *In re Miller*, 90 B.R. 317 (Bankr.E.D.Tenn. 1988). In *Miller*, the debtors objected to an IRS amendment that sought to add a claim for a 100% penalty for failure to pay employment taxes when the original IRS proof of claim only listed personal income taxes. *Miller*, 90 B.R. at 319. The court concluded that the 100% penalty claim was "not based on the same conduct, transaction or occurrence as the timely filed claim for personal income tax. The timely proof of claim was not by itself any warning of the possible claim for the 100% penalty." *Id.* at 323 (citing *In re Simms*, 40 B.R. 186 (Bankr.N.D.Ga.1984)).

The bankruptcy court in *In re Overly–Hautz Co.*, 57 B.R. 932, 936–37 (Bankr. N.D.Ohio 1986) also applied the principles of *International Horizons* when it denied an amendment to a timely filed claim listing corporate withholding and FICA taxes within the context of a Chapter 11 reorganization. The amended claim asserted liability for excise taxes related to the debtor's pension plan funding deficiencies. *Overly–Hautz Company*, 57 B.R. at 936. The court observed that "[e]xcept for their status as taxes, excise taxes are totally unrelated to the original claim for corporate, withholding and FICA taxes. The original claim provides no notice of intent to hold the [d]ebtor liable for excise taxes, nor does it indicate existence or nature of IRS's claim for such taxes." *Id.*

---

**6.** The debtors included payments for both personal taxes and payroll taxes in their plan in the total sum of $25,228 which total sum was great-

er than the timely filed claim of the IRS and slightly less than the Amended Claim re income taxes filed on April 10, 1992.

Based on the analysis of the relevant law in this area, the Court allows the IRS to amend its claim to include the 1990 income taxes, but denies that its amended claim for employment taxes should relate back to the timely filed claim.

## ALLOWANCE OF AN UNTIMELY FILED CLAIM

■ The IRS also relies on the decision in *In re Hausladen*, 146 B.R. 557 (Bankr. D.Minn.1992) (*en banc*) in support of its argument that this Court cannot disallow an untimely filed priority claim. The issue before the *Hausladen* court was whether the court must allow a claim filed in a Chapter 13 case after the 90–day bar date established in Rule 3002(c) of the Federal Rules of Bankruptcy Procedure.

The court found that 11 U.S.C. § 502 "specifically governed" the allowance of claims. Section 502, it observed, lists eight grounds for disallowing claims and tardy or late filing is not among them. From this language, the court concluded that "the words are clear" and "lateness is not a ground for disallowance under section 502." *Hausladen*, 146 B.R. at 559. (citation omitted). In addition, the court claimed that this reading of the statute did not contravene the intent of the Code or conflict with any other sections. *Id.* at 560.

To support its reading of § 502, the court referred to § 726, which provides for different treatment of timely and untimely claims, but does not disallow a claim on the basis of untimeliness. *Id.* The court explained that "[w]hile we recognize that § 726 applies only to Chapter 7 cases, it is a clear illustration of the principal: while treatment of a claim may be dependent on its timeliness, allowance is not." *Id.*

Although the court acknowledged that Rule 3002 provided a bar date, it determined that § 502 and Rule 3002 have different purposes. *Id.* The two should not be read together because "§ 502 and Rule 3002 are not complementary but independent." *Id.* Section 502 provided the guidelines to allow a claim and thereafter, the claim may be "classified ... for treatment under the plan." *Id.* Rule 3002 establish-

es whether a claim is tardily filed and "this provides a basis for differing treatment in a chapter 13 plan." *Id.*

Finally, the court concluded that the rights of late filed claimholders in Chapter 13 cases "are not defined by the Code but rather are controlled by the Chapter 13 plan." *Id.* Accordingly, "[t]he plan may treat these claims in several different ways. The plan may provide that tardily filed claims be paid after timely filed claims are paid in full or for no payment at all." *Id.* Thus, the court seems to suggest that the remedy for this "dilemma" merely rests with debtors' attorney placing an added sentence in their proposed plan that states in essence: "Any claim filed after the time period allowed by Bankruptcy Rule 3002 shall be paid '0'."

Although this Court is not bound by the Minnesota bankruptcy court, its finds the decision somewhat intriguing since it is an *en banc* decision. Nevertheless, this court squarely rejects *Hausladen*, both under a legal analysis and from a policy standpoint. First, this Court disagrees with *Hausladen's* conclusion that its reading of § 502 does not derogate the intent of the Code, particularly as it pertains to Chapter 13. In addition, this Court pronounces that § 502 and Rule 3002 must be read together, comporting with Ninth Circuit law and directly contradicting the *Hausladen* decision. Finally, this Court rejects *Hausladen* on the grounds that it proposes that the debtor handle untimely claims only within the confines of the plan.

Title 11 U.S.C. § 1305 provides: "... Except as provided in subsection (c) of this section, a claim filed under subsection (a) of this section shall be allowed or disallowed under section 502 of this title ..." Accordingly, a bankruptcy court looks to the general provisions set forth in § 502 in order to determine whether claims filed under Chapter 13 should be allowed.

Furthermore, Federal Rules of Bankruptcy Procedure Rule 3002 establishes that an unsecured creditor must file a proof of claim and in a Chapter 13 proceeding, that creditor must file within 90 days

of the meeting of creditors. Bankruptcy Rule § 3002(a) and (c). "The Bankruptcy Court is permitted to extend the time to file a claim after the filing period has expired *only* if the requesting party files a timely motion." *In re Tomlan,* 102 B.R. 790, 791–92 fn. 1 (E.D.Wash.1989) *aff'd per curiam* 907 F.2d 114 (9th Cir.1990) (citing *In re Pigott,* 684 F.2d 239, 243 (3d Cir.1982); *In re Chirillo,* 84 B.R. 120, 122 (Bankr. N.D.Ill.1988); *In re Owens,* 67 B.R. 418, 423 (Bankr.E.D.Pa.1987); and Bankruptcy Rule 9006(b)(3)); *see also In re Coastal Alaska Lines, Inc.,* 920 F.2d 1428, 1432 (9th Cir.1990) (bankruptcy court can extend bar date only under situations listed in 3002(c)).

█ The Rule 3002 bar date plays a very practical role in furtherance of the goals of Chapter 13, in that it presents a date by which all claims must be filed with the court so that the plan designed by the debtors and already confirmed by the court would be a workable plan in terms of trustee administration. "The purpose of Chapter 13 is 'to serve as a flexible vehicle for the repayment of part or all *of the allowed claims* of the debtor.'" *Tomlan,* 102 B.R. at 792 (emphasis in original) (quoting Sen. Rept. No. 95–989 Pub.L. 95–598, 92 Stat. 2549, 95th Cong., 2d Sess. (1978), p. 141, reprinted in U.S.Code Cong. & Admin.News 1978 at 5787, 5927). It is necessary for all unsecured creditors seeking payment under the plan to file a proof of claim. *Tomlan,* 102 B.R. at 792. "A date certain for such filings is *crucial* to the ability to determine the full extent of the debts and evaluate the efficacy of the plan in light of the Debtor's assets and foreseeable future earnings." *Id.* (emphasis added); *see also In re Goodwin,* 58 B.R. 75, 77 (Bankr.D.Me.1986) (method for ensuring that debtor is informed, early in proceedings, of claims to be paid is requirement that claims be filed timely).

█ Not only does the requirement of timely filed claims under § 3002 effectuate the purpose of Chapter 13, but it also sets forth a criteria for determining whether to allow a claim. In *Tomlan,* the Ninth Circuit affirmed the district court's holding that an IRS priority claim, which the bankruptcy court disallowed as untimely, was also dischargeable under the Bankruptcy Code. *See Tomlan,* 907 F.2d at 114 (9th Cir.1990) and *Tomlan,* 102 B.R. at 792 and 797. The court explained that for a debt to "achieve priority status," the Court must allow the claim. *Id.* at 797. In order for the court to allow it, the claim must be timely filed. *Id.* (citing 11 U.S.C. section 507(a)(7)). Moreover, the court noted that "[t]he law is clear and unchallenged here that the Bankruptcy Court has no discretion to allow a late-filed proof of claim. The code gives no special treatment for the late filing of potential priority claims." *Id.* at 795.

The Ninth Circuit, therefore, has affirmed that Bankruptcy Rule 3002 complements the process of allowing claims by setting a bar date by which a claim must be filed in order to be allowed under 11 U.S.C. § 502. While this Court recognizes, however, that § 502 does not expressly address the question of timeliness of a claim, it finds that from this mere omission the *Hausladen* court improperly leapt to the conclusion that Rule 3002 in essence has no meaning in the allowance or bar of claims.

Divesting § 3002 of its authority to limit the time to file a claim in order for it to be allowed is exactly the kind of proposition that the United States Supreme Court rejected in *Taylor v. Freeland,* —— U.S. ——, ——, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992). In *Freeland,* the trustee argued that a 30–day time period established in Bankruptcy Rule 4003(b) did not preclude him from objecting after the 30–day period, since the language in 11 U.S.C. § 522(*l*) merely stated "unless a party objects." *Freeland,* —— U.S. at ——, 112 S.Ct. at 1648. The Supreme Court found that "Rule 4003(b) gives the trustee and creditors 30 days from the initial creditors' meeting to object. By negative implication, the Rule indicates that creditors may not object after 30 days 'unless, within such period, further time is granted by the court.'" *Freeland,* —— U.S. at ——, 112 S.Ct. at 1648. The Supreme Court notes that "[d]eadlines may lead to unwelcome

results, but they prompt parties to act and they produce finality." *Id.*

By analogy, this analysis can be applied to the relationship between Bankruptcy Rule 3002 and Bankruptcy Code § 502. If a creditor does not file its claim within the 90–day period specified in Rule 3002, then "by negative implication," the creditor can no longer file an enforceable claim, or at least one that will be allowed for purposes of the debtor's plan, if objected to by Debtor.

Moreover, such a reading of § 502 and Rule 3002 would comport with the exception that the Code carves out, in § 726, for Chapter 7 liquidation. Under the specific guidelines of § 726, a creditor who has filed an untimely claim may still collect from the debtor's estate. 11 U.S.C. § 726(a)(2)(C).[7] In essence, this section provides for the classification of claims into allowed timely and allowed untimely claims and accords these claims different priority.

The *Hausladen* court properly observed the dynamics of § 726. It noted that under § 726 claims could be allowed even if untimely filed. *Hausladen*, 146 B.R. at 560. The Minnesota court, however, inappropriately presumed that § 726 presented a general principal on the allowance of claims as untimely filed. *Id.* Such reasoning is defeated by virtue of the fact that § 726 is found only in Chapter 7 as opposed to one of the sections applicable to all cases under Title 11. This demonstrates that its principles are limited to Chapter 7 proceedings, whereas the provisions in § 502 are applicable to all Chapters. The allowance of untimely claims is unique to Chapter 7 and § 726 does not apply to any other Chapter, including Chapter 13. This Court finds that the *Hausladen* court's

interpretation of § 726, as it relates to Chapter 13, should not be supported.

Finally, this Court rejects *Hausladen's* proposition that the Chapter 13 Plan is the place to address the consequences of an untimely filed claim. *Hausladen* suggested that a plan could provide for payment or no payment at all to untimely claims. If debtors were to follow *Hausladen*, they could construct a plan that provides for an appropriate percentage of all timely filed claims and 0% of all tardily filed claims, whether or not priority. This type of provision would obviate the need for the debtor to object to a claim as untimely filed, since the plan provides for 0% payment to those claims.

Generally, under § 502, all claims are "deemed allowed" unless a party in interest objects. 11 U.S.C. § 502(a). Therefore, if the IRS filed its proof of claim untimely, and the debtor or trustee failed to object, it is "deemed allowed." Under *Hausladen*, however, the debtor no longer needs to object because the plan already addresses the untimely filed claim. Such a result contravenes the language and underlying purposes of § 502. The Code would not provide for the power to object to a claim if the debtor could simply circumvent this process by denying payment to a claimholder through the plan.

Since *Hausladen*, numerous courts have published opinions on this issue, the most recent being *In re Zimmerman*, 156 B.R. 192 (W.D.Michigan, 1993) which opinion was published after my ruling on June 16, 1993, this was also an *en banc* decision which rejects *Hausladen*. I concur with the well-reasoned analysis of both law and policy expressed in that opinion and in *In re Bailey*, 151 B.R. 28 (N.D.N.Y.1993).

---

**7.** 11 U.S.C. § 726(a)(2)(C) provides in pertinent part:
> (a) Except as provided in section 510 of this title, property of the estate shall be distributed— ...
> (2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in ... proof of which is—
> (C) tardily filed under section 501(a) of this title if

> (i) the creditor that holds such claim did not have a notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and
> (ii) proof of such claim is filed in time to permit payment of such claim ...

For all of the reasons explained above, this Court rejects *Hausladen* and the IRS' argument that its claim cannot be barred as an untimely filed claim.

### ORDER

The amended claim, which represent general income tax liabilities, is allowed under the prior timely filed claims of the IRS. That portion of the November 30, 1992 claim for unpaid federal payroll taxes is disallowed as an untimely filed claim.